CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 08 2018

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| KENNETH BRIAN JOYNER, | ) | Civil Action No. 7:16-cv-00486 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| LESLIE J. FLEMING, et al., | ) | By:   Hon. Michael F. Urbanski |
|     Defendants. | ) |        Chief United States District Judge |

Kenneth Brian Joyner, a Virginia inmate proceeding pro se, commenced this action pursuant to 42 U.S.C. § 1983, naming numerous staff of the Virginia Department of Corrections ("VDOC") and the Wallens Ridge State Prison ("WRSP") as defendants. Plaintiff alleges that his assignment to special housing and the confiscation of his property violated the Eighth and Fourteenth Amendments of the United States Constitution. Defendants filed a motion for summary judgment, and Plaintiff responded, making this matter ripe for disposition.[1] After reviewing the record, the court grants Defendants' motion and directs them to file another motion for summary judgment addressing additional claims.

I.
A.

Pursuant to VDOC Operating Procedure ("OP") 861.3, "Special Housing," an inmate may not be held in pre-hearing segregation for longer than three working days without a formal review by the Institutional Classification Authority ("ICA"). OP 861.3 also requires the ICA to review the appropriateness of pre-hearing segregation no later than fifteen days thereafter. OP 861.3 further

---

[1] Plaintiff filed a motion to incorporate previously-filed exhibits 31-91G (ECF No. 45-2) to his response in opposition to Defendants' motion. The court grants the motion to the extent the exhibits are used in support of the arguments specifically raised in the response. See United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). "The 'special judicial solicitude' with which a district court should view . . . pro se complaints does not transform the court into an advocate." Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990); see Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009) (recognizing a plaintiff cannot use a response to a motion for summary judgment to amend or correct the complaint challenged by the motion for summary judgment).

requires the ICA to review the inmate's adjustment and behavior every ninety days and recommend whether the inmate should remain in segregation.

On November 26, 2014, defendant Sigmon charged Plaintiff with "Lewd or Obscene Acts Directed Toward or in the Presence of Another" for masturbating in her presence. Plaintiff was transferred to pre-hearing segregation that same day. On December 2, 2014, which was the next business day, the ICA reviewed Plaintiff's housing status and recommended he stay in pre-hearing segregation.[2]

Sixteen days later on December 18, 2014, a DHO deemed Plaintiff guilty of "Lewd or Obscene Acts" and fined him $12.00.[3] The ICA convened that same day and had Plaintiff assigned to administrative segregation.

The ICA reviewed Plaintiff again on February 27, 2015, which was within ninety days of the last ICA hearing. The ICA recommended that Plaintiff stay in segregation for a longer period of stable adjustment.

The ICA reconvened on June 3, 2015, which was six days past the ninety-day period. The ICA recommended that Plaintiff be released to a general population unit if space was available. Plaintiff moved out of segregation on June 5, 2015.

**B.**

At the time Plaintiff received the charge for "Lewd or Obscene Acts," he had been assigned to WRSP's Grooming Standard Violator Housing Unit ("VHU"). The VHU's controlling procedure, OP 864.2, requires that any VHU inmate who is found guilty of a "Lewd or Obscene

---

[2] VDOC and WRSP staff had an extended Thanksgiving holiday from Thursday, November 27, until Monday, December 1, 2014.
[3] Defendants Warden Fleming and Regional Ombudsman Ponton affirmed the conviction on appeal.

2

Acts" charge be removed from the VHU and placed in segregation until such time he qualified for admittance into general population or readmittance into the VHU.

After Plaintiff was transferred to prehearing segregation, staff had to inventory and pack Plaintiff's personal property left in the cell. Collins, Turner, and Sigmon were sorting Plaintiff's property when they found artwork that appeared to be gang related. Sigmon confiscated the artwork as contraband, and the artwork's disposition or location is unknown.

Before being housed in segregation, Plaintiff had ordered a holiday food package, known as a "Secure Pak." Unfortunately for Plaintiff, it arrived after he was already in segregation, and a Secure Pak is not permitted inside a segregation cell. Because the contents of the Secure Park were deemed perishable, staff informed Plaintiff that he had to make arrangements within thirty days to mail it or have someone retrieve it from WRSP. Plaintiff did not accomplish either option, and the Secure Pak was confiscated on January 26, 2015.

## II.

Defendants argue in their motion for summary judgment that, inter alia, they are entitled to qualified immunity.[4] A party is entitled to summary judgment if the pleadings, the disclosed materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). "Material facts" are those facts necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the admissible evidence and all reasonable inferences

---

[4] Defendants also assert passingly that they are absolutely immune from damages for their decisions made in institutional disciplinary hearings and appeals. When seeking absolute immunity, a government official bears a heavy burden of demonstrating that overriding public policy considerations warrant such exceptional protection. Defendants have not done so, and furthermore, they do not address Cleavinger v. Saxner, 474 U.S. 193, 206-07 (1985), which held that prison officials involved in disciplinary decisions are entitled to qualified, not absolute, immunity, for quasi-judicial functions. Consequently, the court considers whether defendants are entitled to qualified, and not absolute, immunity.

drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-24. A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995); Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). However, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

A government official sued in an individual capacity via § 1983 may invoke qualified immunity. Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The doctrine of qualified immunity 'balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). The "qualified immunity analysis typically involves two inquiries: (1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." Raub v. Campbell, 785 F.3d 876, 881 (4th Cir. 2015); see In re Allen, 106 F.3d 582, 593 (4th Cir. 1997) ("[A]n official may claim qualified immunity as long as his actions are not clearly established to be beyond the

boundaries of his discretionary authority."). A "court may address these two questions in the order . . . that will best facilitate the fair and efficient disposition of each case." Estate of Armstrong v. Vill. of Pinehurst, 810 F.3d 892, 898 (4th Cir. 2016) (internal quotation marks omitted). A plaintiff's claim "survives summary judgment, however, only if [the court] answer[s] both questions in the affirmative." Id.

### III.

Plaintiff's dissatisfaction with the adjudication of the institutional charge and the time spent in segregation implicates the Due Process Clause of the Fourteenth Amendment.[5] The court finds that Defendants are entitled to qualified immunity and summary judgment for these claims.

To state a due process claim, an inmate must show that he was deprived of "life, liberty, or property" by governmental action. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). When a disciplinary penalty does not cause an inmate's original sentence to be enhanced, protected interests are generally limited to freedom from restraint that imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. See Sandin v. Conner, 515 U.S. 472, 484 (1995) (holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest). Unless the inmate proves deprivation of a protected interest, he has no federal right to particular protections. See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454 (1985) (substantive requirement for

---

[5] Plaintiff repeatedly invokes the label "deliberate indifference," which is a term of art relating to claims arising under the Eighth Amendment's prohibition of cruel and unusual punishment of prisoners. See, e.g., Farmer v. Brennan, 511 U.S. 825, 838 (1994). The court declines to construct such a claim based merely on the label "deliberate indifference" and in the absence of any pertinent fact that could be considered in support of that claim. See, e.g., Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) (recognizing liberal construction does not mean courts must conjure up questions never squarely presented).

prison discipline proceedings implicating the Due Process Clause); Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (same about procedural requirements).

Neither Plaintiff's stay in segregation for approximately six months nor the $12.00 fine implicates interests protected by the Due Process Clause. Plaintiff fails to establish that the fine imposed an atypical and significant hardship on him in comparison to the ordinary incidents of prison life. See, e.g., Henderson v. Virginia, No. 7:07-cv-266, 2008 U.S. Dist. LEXIS 5230, at *33, 2008 WL 204480, at *10 (W.D. Va. Jan. 23, 2008) (finding a $12 fine did not pose an atypical and significant hardship on the plaintiff in comparison to the ordinary incidents of prison life), aff'd, 272 F. App'x 264 (4th Cir. 2008); see also Washlefske v. Winston, 234 F.3d 179, 185 (4th Cir. 2000) (discussing the limited interest an inmate has in a trust account). Likewise, Plaintiff fails to describe how Virginia created a protected liberty interest to avoid segregation at WRSP and how his classification and segregation at WRSP were atypical or significant. See, e.g., Sandin, 515 U.S. at 484; see also Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) (holding that a claim of a false disciplinary charge cannot serve as the basis for a constitutional claim). "[A]dministrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." Hewitt v. Helms, 459 U.S. 460, 468 (1983). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991).

It is not disputed that staff exceeded timelines set by OP 861.3 for various classification reviews. However, Plaintiff fails to establish how the brief delays, even if violating VDOC policy, implicate federal due process protections. See Riccio v. Cty. of Fairfax, VA., 907 F.2d 1459, 1469

(4th Cir. 1990) (holding a claim that prison officials have not followed their own independent policies or procedures also does not state a constitutional claim); cf. Incumaa v. Stirling, 791 F.3d 517, 520 (4th Cir. 2015) (holding a twenty-year confinement in segregation implicated a liberty interest).

Plaintiff's allegations that prison officials intentionally or negligently deprived him of his property in contravention of policy or custom do not state any constitutional claim if a meaningful post-deprivation remedy is available for the loss. Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S. 527, 538-39 (1981), overruled in irrelevant part by Daniels v. Williams, 474 U.S. 327, 330-31 (1986). Plaintiff has a post-deprivation remedy under Virginia law, the Virginia Tort Claims Act ("VTCA"). See Va. Code § 8.01-195.3. "Section 1983 was intended to protect only federal rights guaranteed by federal law, and not tort claims for which there are adequate remedies under state law." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Therefore, Plaintiff cannot prevail with a constitutional claim under § 1983 against VDOC officials based on the alleged property loss in this case.

Plaintiff faults many defendants for their participation in or responses to administrative remedies or for alleged acts or omissions by their subordinates. However, liability under § 1983 may not be predicated on the theory of respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 663 n.7, 691-94 (1978); Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001). Furthermore, Plaintiff does not have a constitutional right to access administrative remedies. Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017); Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). Moreover, "[a] superior's after-the-fact denial of a grievance [or response to a letter] falls far short of establishing § 1983 liability." DePaola v. Ray, No. 7:12cv00139, 2013 U.S. Dist. LEXIS 117182, at *23, 2013 WL 4451236, at *8 (W.D. Va. July 22, 2013) (Sargent,

M.J.) (citing Brooks v. Beard, 167 F. App'x 923, 925 (3rd Cir. 2006)). Accordingly, Defendants are entitled to qualified immunity and summary judgment for these claims.

## IV.

Two unenumerated claims appear in the "argument" attachment to the amended complaint that Defendants have not yet addressed. Plaintiff cites the Fourteenth Amendment's Equal Protection Clause and argues that he was treated differently than other inmates in the VHU. Specifically, Plaintiff alleges that the other inmates, one of whom was guilty also guilty of "Lewd or Obscene Acts," had been segregated in prehearing detention after Plaintiff but was released earlier and directly back into the VHU, whereas Plaintiff was detained longer and released into administrative segregation. Plaintiff explains that this alleged disparate treatment resulted because "nobody [else] ha[d] been complaining except [Plaintiff], so [staff] w[as] going to release [Plaintiff] last." The court liberally construes this second allegation as a retaliation claim pursuant to Booker v. South Carolina Department of Corrections, 855 F.3d 533, 541 (4th Cir. 2017). Pursuant to Standing Order 2013-6, Defendants shall file a motion for summary judgment supported by affidavit(s) addressing these two remaining claims.

## V.

For the foregoing reasons, the court grants in part Plaintiff's motion to incorporate exhibits, grants Defendants' motion for summary judgment, and directs Defendants to file a motion for summary judgment supported by affidavit(s) that addresses the equal protection and retaliation claims.

ENTER: This 7th day of May, 2018.

/s/ Michael F. Urbanski
Chief United States District Judge