# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **KENNETH BRIAN JOYNER,** | ) | Civil Action No. 7:16cv00486 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **LESLIE J. FLEMING, et al.,** | ) | By: Michael F. Urbanski |
| Defendants. | ) | Chief United States District Judge |

Kenneth Brian Joyner, a Virginia inmate proceeding pro se, commenced this action pursuant to 42 U.S.C. § 1983, naming numerous staff of the Virginia Department of Corrections ("VDOC") and Wallens Ridge State Prison as defendants. By memorandum opinion and order entered May 8, 2018, the court granted defendants' motion for summary judgment, but directed defendants to file another motion for summary judgment regarding two unaddressed claims, an equal protection claim and a retaliation claim. See ECF Nos. 59 and 60. Pursuant to the court's order, defendants filed another motion for summary judgment. See ECF Nos. 63 and 64. Joyner responded and this matter is ripe for disposition. See ECF No. 70. After reviewing the record, the court grants defendants' motion.

## I.

The allegations of Joyner's unverified amended complaint are set out in the court's prior memorandum opinion.[1] See ECF No. 59. As relevant to the remaining claims before the court, Joyner alleges that he was placed in the Special Housing Unit ("SHU") from the Grooming Standard Violator Housing Unit ("VHU") on November 26, 2014, after he was charged with

---

[1] The court notes that Joyner filed an unverified amended complaint on September 25, 2017. See ECF No. 43. By order entered September 29, 2017, the court noted that Joyner's amended complaint constituted his "sole pleading." See ECF No. 46. Although his original complaint (ECF No. 1) is verified and his amended complaint (ECF No. 43) is not, the court notes that the claims currently before the court were raised for the first time in his unverified amended complaint.

(and ultimately convicted of) the disciplinary infraction of indecent exposure, when he masturbated in front of a female officer. Joyner alleges that seven other inmates were placed in the SHU after he was, but that the other inmates were all released before him. He also alleges that one inmate in particular had been charged with the same offense as him, but that the other inmate was released from segregation about a month before him. Joyner states that when he inquired as to why everyone was being released except him, defendant Unit Manager Dennis Collins told him that was the only inmate complaining and, therefore, they were going to release him last. Joyner argues that he was denied equal protection and retaliated against because he complained about the "unlawful treatment."

Defendants moved for summary judgment and included an affidavit from Unit Manager Dennis Collins. Collins avers that Joyner was assigned to the VHU on February 22, 2010. Between that time and October 2017, Joyner received sixteen institutional disciplinary convictions and, consequently, was "back and forth" between segregation, general population, and VHU housing assignments. Joyner was assigned to the SHU on November 26, 2014, following his receipt of the institutional disciplinary charge for indecent exposure. He stayed in the SHU until he was released to general population on June 5, 2015. At the time of Joyner's indecent exposure charge in November 2014, he had already received two disciplinary convictions in 2014: possession of contraband and possession of intoxicants. Collins affirms that the Institutional Classification Authority's ("ICA") decision to continue Joyner in segregation status between November 26, 2014 and June 5, 2015, was "in no way made out of retaliation," but was "an appropriate decision" that was "made in order to give Joyner an opportunity to demonstrate stability in his behavior." After his release from segregation on June 5, 2015,

2

Joyner remained in a general population assignment until he was returned to the VHU on February 17, 2016. With the exception of a one-month assignment to segregation between October 17, 2016 and November 16, 2016 (following another institutional disciplinary conviction for possessing intoxicants), Joyner had, from February 17, 2016 through at least August 2, 2018, remained assigned to the VHU.

Unit Manager Collins avers that the other inmate that Joyner references as having received the same conviction as Joyner, offender Davis, was assigned to segregation on March 4, 2015, following receipt of an indecent exposure charge, and was released to general population on May 15, 2015. Prior to that charge, offender Davis had not received an institutional charge since June 2013. Collins states that while staff follows VDOC guidelines regarding offender housing assignments, those decisions are made by the ICA on an individual basis. Numerous factors are considered, including behavior patterns and history of disciplinary issues. One offender's housing assignment has no bearing on decisions made regarding another offender. Collins affirms that at no time did he tell Joyner that he was being held in segregation longer because of his complaints and grievances.

**II.**

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Material facts" are those facts necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). If the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); Sakaria v. Trans World Airlines, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment). A plaintiff may not amend a complaint through argument in a brief opposing summary judgment. Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009).

In the Fourth Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). However, Joyner's amended complaint is unverified. "[T]he law is clear that a

plaintiff cannot rely on an unverified complaint in opposing a motion for summary judgment." See Huff v. Outlaw, No. 9:09-cv-00520-RBH, 2010 U.S. Dist. LEXIS 34696, at *5, 2010 WL 1433470, at *2 (D.S.C. Apr. 8, 2010).

Further, as a general rule, the non-movant must respond to a motion for summary judgment with affidavits, or other verified evidence, rather than relying on an unverified complaint. Alston v. Ruston, No. 9:99-244-19RB, 2000 U.S. Dist. LEXIS 11939, at *9 (D.S.C. Mar. 9, 2000) (citing Celotex Corp., 477 U.S. at 324; Williams, 952 F.2d at 823). An affidavit presented in opposition to a motion for summary judgment "must present evidence in substantially the same form as if the affiant were testifying in court." Id. (citing Evans v. Technologies Applications & Service Co., 80 F.3d 954, 962 (4th Cir. 1996)). Thus, a party cannot ward off summary judgment with an affidavit or verified complaint "based on rumor or conjecture." Id. (citing Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir. 1989); Conaway v. Smith, 853 F.2d 789, 793 (10th Cir. 1988) (summary judgment may be appropriate in cases where the allegations in the verified pleading are merely conclusory)). Joyner has responded to defendants' motion for summary judgment, but he has failed to provide any affidavit, even his own, to contradict defendants' version of the facts.[2] The court notes that Joyner was given notice of the motion for summary judgment filed against him and the opportunity to file counter-affidavits or other evidence "contradicting, explaining, or avoiding"

---

[2] Under Federal Rule of Civil Procedure 56(e), if a plaintiff wants certain evidence considered in opposition to a summary judgment motion, plaintiff is required to point it out to the district court. Brown v. Flowers, 196 F. App'x 178, 182 (4th Cir. 2006). The court notes that Joyner cites to many exhibits in his response in opposition to defendants' motion for summary judgment. See ECF No. 70. These exhibits were attached to his motion for preliminary injunction filed in September 2017. See ECF No. 45. The court has reviewed these exhibits and finds that none of the exhibits genuinely dispute the material facts established in defendants' motion for summary judgment. In addition, although not referenced in his response in opposition to the motion for summary judgment, the court notes that Joyner filed a declaration in support of his motion for a temporary restraining order and preliminary injunction. See ECF No. 44. The court has reviewed the declaration and finds that it does not genuinely dispute the material facts established in defendants' motion for summary judgment.

defendants' evidence. See ECF Nos. 63 and 65. Accordingly, the court will view defendants' facts, as established in the affidavit of Unit Manager Collins, as undisputed, but the court may grant the motion only if defendants are entitled to summary judgment. Fed. R. Civ. P. 56(e)(2)-(3).

### III.

To the extent Joyner brings this action against the defendants in their official capacity for monetary damages, such relief is not available via § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989). Therefore, the court will grant defendants' motion for summary judgment as to Joyner's claims for monetary damages against defendants in their official capacities.

### IV.

The Equal Protection Clause of the Fourteenth Amendment generally requires the government to treat similarly situated people alike. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439-41 (1985). It "does not take from the States all power of classification, but keeps governmental decision makers from treating differently persons who are in all relevant respects alike." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks and citations omitted). To prove an equal protection claim, an inmate "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination" on the basis of the plaintiff's membership in a protected class, such as race, gender, or religion. Id. (internal quotation marks omitted). The plaintiff must next show that the policy is not reasonably related to legitimate penological interests. Id. at 732. This element requires the inmate to "allege facts

sufficient to overcome the presumption of reasonableness applied to prison policies." Id. Once this showing is made, the burden shifts to a defendant to show the disparity is not an exaggerated response to a particular concern. Morrison v. Garraghty, 239 F.3d 648, 654-55 (4th Cir. 2001).

Joyner alleges that other inmates who were placed in segregation around the same time as him were all released before him. With the exception of one inmate, he does not allege that the other inmates had the same, or even similar disciplinary convictions, and thus has not demonstrated that they were similarly situated to him. With regard to the one inmate who had the same disciplinary conviction, the uncontroverted evidence is that the other inmate had a much different disciplinary record than that of Joyner, with Joyner having had at least three convictions that year and the other inmate having only one conviction in nearly two years. As such, the court cannot find that Joyner has demonstrated that he and the other inmate are similarly situated. Moreover, Joyner does not identify any intentional or purposeful discrimination by the defendants. Accordingly, the court concludes that Joyner has not shown a violation of his right to equal protection and, therefore, the court will grant defendants' motion for summary judgment as to this claim.

## V.

It is well settled that state officials may not retaliate against an inmate for exercising his constitutional rights. See Am. Civ. Liberties Union v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993). In order to sustain a cognizable retaliation claim under § 1983, an inmate must point to specific facts supporting his claim of retaliation. White v. White, 886 F.2d 271 (4th Cir. 1989). A First Amendment retaliation claim under § 1983 consists of three elements: (1) the plaintiff engaged in constitutionally protected First Amendment activity; (2) the defendant took

7

an action that adversely affected that protected activity; and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017).

Prisoners have a "First Amendment right to be free from retaliation for filing a grievance" under the prison's established grievance procedure. Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017). "[F]or purposes of a First Amendment retaliation claim under § 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005).

Joyner alleges in his unverified amended complaint that when he asked why all other inmates except him were being released back to the VHU, defendant Unit Manager Collins told him that he would be released last because he was on the only inmate "complaining." Joyner argues that he was held in the SHU as a "direct act of retaliation" in response to his "continuous complaints of unlawful treatment." However, the uncontroverted evidence before the court is an affidavit from Collins affirming that he, in fact, did not tell Joyner that he was being held in segregation longer because of his complaints and grievances. Further, Collins avers that the ICA decided to continue Joyner's assignment to the SHU in order for him to demonstrate stability in his behavior, after his third disciplinary conviction in a year. Based on the foregoing, the court cannot find that Joyner has shown that he was retaliated against for exercising a First Amendment right.[3] Accordingly, the court will grant defendants' motion for summary judgment as to this claim.

---

[3] The court also notes that Joyner alleges no personal involvement of defendants Fleming, Clarke, Ponton, Combs, Anderson, Stapleton, Welch, Ravizee, Cope, Gilbert, Franks, Sgt. Collins, Sigman, Turner, Addington, Robinson, Locust, and King.

## VI.

Upon review of the docket, it appears that although he is named in Joyner's amended complaint, defendant Unit Manager Jimmy Collins was never added to the docket or notified of this action. Accordingly, the court will direct the Clerk to add Jimmy Collins as a defendant and notify him of this action.

## VII.

For the foregoing reasons, the court grants defendants' motion for summary judgment and adds Unit Manager Jimmy Collins as a defendant.

ENTER: This 18th day of March, 2019.

/s/ Michael F. Urbanski
Chief United States District Judge